**UNITED STATES DISTRICT COURT**
**FOR THE**
**DISTRICT OF CONNECTICUT**

THE COMPUTING TECHNOLOGY INDUSTRY
ASSOCIATION, INC.

                    PLAINTIFF

VS.

MALA PREMANEY, INDIVIDUALLY; MALA
PREMANEY D/B/A ADARSHA COMPUTERS;
MALA PREMANEY D/B/A CHEATEXAMS.COM;
MALA PREMANEY D/B/A TROYTEC.COM;
MALA PREMANEY D/B/A TESTKILLER.COM;
TUSHAR BHAGAT, INDIVIDUALLY; TUSHAR
BHAGAT D/B/A ADARSHA COMPUTERS;
TUSHAR BHAGAT D/B/A CHEATEXAMS.COM;
TUSHAR BHAGAT D/B/A TROYTEC.COM;
TUSHAR BHAGAT D/B/A TESTKILLER.COM,
ADARSHA COMPUTERS; D/B/A
CHEATEXAMS.COM

                    DEFENDANTS.

CIVIL ACTION
NO. 3:03cv323(SRU)

OCTOBER 20, 2003

## MOTION FOR DEFAULT JUDGMENT

Pursuant to Fed. R. Civ. P. 55(b), the Plaintiff, The Computing Technology

Industry Association, Inc. ("Plaintiff" or "CompTIA"), hereby moves for a default

judgment against the Defendants, MALA PREMANEY, INDIVIDUALLY; MALA

PREMANEY   D/B/A   CHEATEXAMS.COM;   MALA   PREMANEY   D/B/A

ORAL ARGUMENT NOT REQUESTED

TROYTEC.COM; MALA PREMANEY D/B/A TESTKILLER.COM; TUSHAR BHAGAT, INDIVIDUALLY; TUSHAR BHAGAT D/B/A CHEATEXAMS.COM; TUSHAR BHAGAT D/B/A TROYTEC.COM; and TUSHAR BHAGAT D/B/A TESTKILLER.COM. In support of this Motion, CompTIA would show that:

**PROCEDURAL ISSUES**

1.      CompTIA originally commenced this action on or about February 24, 2003.

2.      On or about August 5, 2003, CompTIA sought leave to file a Second Amended Complaint in this action adding the following parties: MALA PREMANEY, INDIVIDUALLY; MALA PREMANEY D/B/A CHEATEXAMS.COM; MALA PREMANEY D/B/A TROYTEC.COM; MALA PREMANEY D/B/A TESTKILLER.COM; TUSHAR BHAGAT, INDIVIDUALLY; TUSHAR BHAGAT D/B/A CHEATEXAMS.COM; TUSHAR BHAGAT D/B/A TROYTEC.COM; and TUSHAR BHAGAT D/B/A TESTKILLER.COM. (collectively, the "Defendants"). The Court granted CompTIA such leave on August 7, 2003. CompTIA's Second Amended Complaint raises claims of copyright infringement, 17 U.S.C. § 101, et seq., trademark infringement, 15 U.S.C. 1114 et seq., false designation of origin, false representation and false advertising, 15 U.S.C. § 1125, violation of the Connecticut Uniform Trade Secrets Act, Conn. Gen. Stat. § 35-50, et seq., and violations of the

2

Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110b, et seq.  The Complaint further requests the imposition of a constructive trust upon illegal profits and an accounting.  In summary, the Defendants, through www.cheatexams.com, www.troytec.com and www.testkiller.com have offered for sale and sold throughout the United States and worldwide, various documents individually identified as "Study Guides" and "Testkillers" that are comprised of actual copyrighted exam questions and answers owned by CompTIA.

3.      This Court has subject matter jurisdiction over this action in accordance with 28 U.S.C. §§ 1331 and 1338 as this is an action for monetary and equitable relief, based upon violations of the Copyright Act, 17 U.S.C. § 101, et seq., and the Lanham Act, 15 U.S.C. § 1114(1) and § 1125(a).  This Court also possesses supplemental jurisdiction over the claims that arise under the laws of the State of Connecticut pursuant to the provisions of 28 U.S.C. § 1367(a) and § 1338(b).

4.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and 1400(a) in that the acts, claims and injuries alleged in this Complaint occurred in this District, and as such, the Defendants may be found in this District.

5.      As evidenced by the Return of Service related to Tushar Bhagat ("Bhagat") (as an individual and doing business as the various entities set forth in

the caption), which has previously been filed with the Court, service of process was effected on Bhagat on August 16, 2003.

6.    Pursuant to Fed. R. Civ. P. 12(a)(1)(A), an answer was required to be served within twenty (20) days of the date of service.  As such, an answer was due from Bhagat on September 5, 2003.  To date, neither an answer nor an appearance has been filed by this Defendant.

7.    As evidenced by the Return of Service related to Mala Premaney ("Premaney") (as an individual and doing business as the various entities set forth in the caption), which has previously been filed with the Court, service of process was effected on Premaney on August 22, 2003.

8.    Pursuant to Fed. R. Civ. P. 12(a)(1)(A), an answer was required to be served within twenty (20) days of the date of service.  As such, an answer was due from Premaney on September 11, 2003.  To date, neither an answer nor an appearance has been filed by this Defendant.

9.    Because the Defendants failed to timely file an answer or enter an appearance in this action, CompTIA filed a Motion for Entry of Default dated September 16, 2003.

10.    A default subsequently entered against the Defendants on October 1, 2003.

**FACTUAL BACKGROUND**

11.    CompTIA is an information technology trade association which represents over 10,000 members.  CompTIA is engaged in, among other things, certifying individuals in the information technology industry.

12.    CompTIA operates its business under the name "CompTIA" and uses the "CompTIA" trademark in connection with its business, products and services. The "CompTIA" trademark is prominently displayed on Plaintiff's literature and products.

13.    CompTIA registered with the United States Patent and Trademark Office ("PTO") and owns the trademarks "CompTIA" and "A+ Certification Program". (See Certificates of Trademark Registration attached to the Second Amended Complaint as Exhibit A) (hereinafter referred to as "Registered Trademarks"). CompTIA has continuously used its Registered Trademarks since the registration of said marks.

14.    CompTIA regularly uses a series of unregistered trademarks to identify itself as the producer and source or various products and services, including its copyrighted Certification Exams.  CompTIA's unregistered trademarks include, among others, the following: (1) "A+ Core Hardware"; (2) "A+ Operating Systems Technologies"; (3) "Network+"; (4) "i-Net+"; (5) "Server+" (6) "Network+

5

Certification"; (7) "Server+ Certification" and (8)"i-Net+ Certification" (collectively, the "Unregistered Trademarks").

15.    CompTIA currently owns and offers, *inter alia*, the following copyrighted Certification Exams: (1) "A+ Core Hardware Exam"; (2) "A+ Operating Systems Technologies Exam"; (3) "Network+ Exam"; (4) "i-Net+ Exam"; and (5) "Server+ Exam" (collectively, the "Certification Exams").  Each Certification Exam is registered with the United States Copyright Office through a secure procedure to protect the secrecy of the exam content.  (See Certificates of Copyright Registration attached to the Second Amended Complaint as Exhibit B and incorporated herein by reference.)

16.    CompTIA uses its Registered and Unregistered Trademarks to promote, among other things, its world renowned Certification Programs.  Moreover, a major source of revenue for CompTIA is its A+, Network+, i-Net+, and Server+ Certification Programs that evaluate the competence of individuals engaged in the sale of computer equipment and related products and services.[1]

---

[1]    CompTIA's A+ Certification Testing Program certifies the competency of entry-level service technicians by assessing basic computer service and repair technology skills.  CompTIA's Network+ Certification Program certifies competency in network technologies by evaluating knowledge of networking technology and practices.  CompTIA's i-Net+ Certification Program certifies competency in internet technology by assessing knowledge of implementing and maintaining internet, intranet and extranet infrastructure.  CompTIA's Server+ Certification is a
(continued ...)

6

17.    In order to become certified under any of CompTIA's Certification Programs, a student must pass the required corresponding Certification Exam(s). Each Certification Exam tests subject matter applicable to a particular Certification Program (i.e. The A+ Core Hardware Exam is part of the A+ Certification Program) and is named accordingly. More than 300,000 professionals have been certified under CompTIA's Certification Programs worldwide since 1993. The Certification Programs are an extremely important revenue source for CompTIA.

18.    The Certification Exams that comprise the Certification Programs were exceptionally costly to develop. In that regard, the following summary regarding the test development process is instructive.

19.    First, to determine the appropriate subject matter and corresponding job responsibilities to be tested in each of its Certification Exams, CompTIA arranged for a worldwide survey of industry professionals, which survey provided statistics on the relevance and importance of various tasks, skills, knowledge and abilities. Based upon this job task analysis, a test blueprint for each subject area was developed. After each test blueprint was developed, numerous workshops for various experts were organized to develop actual test questions. After the test

standard of competency for mid- to upper-level technicians responsible for server hardware functionality.

7

questions were drafted, they were reviewed by a different panel of experts and professional editors for adherence to psychometric standards; consistency with test objectives; technical accuracy; proper language usage, grammar, production and sentence structure; general readability; items construction; and internal consistency. In sum, each Certification Exam is an original work of authorship fixed in a tangible medium of expression by CompTIA.[2]

20.     The Defendants, through www.cheatexams.com, have offered for sale, to anyone with access to the internet, including individuals in Connecticut and throughout the United States and worldwide, various documents individually identified as "Study Guides" that are comprised of actual copyrighted exam questions and answers owned by CompTIA.  These include, but are not limited to, the following Study Guides: (1) "CramSheet for I-Net+"; (2) "CramSheet for A+ Core Hardware"; (3) "CramSheets for A+ OS Technologies"; (4) "CramSheet for

---

[2]     Because of the extraordinary costs of developing its Certification Programs and Exams, the financial loss associated with being forced to recreate the Certification Exams in the event the secrecy or integrity of the test was compromised by unauthorized copying, and the risk to CompTIA associated with certifying incompetent individuals, CompTIA has at all times taken appropriate steps to maintain the secrecy and  integrity of its copyrighted Certification Exams.

Network+"; and (5) "CramSheet for Server+". (See Exhibit C to Second Am. Compl.) These "Study Guides" sell for $55 per copy.[3]

21.    A consumer that purchases study guides from cheatexams receives the infringing product via electronic download directly to their personal computer. In other words, Defendant places its infringing product in the stream of commerce in the United States and throughout the world.

22.    CompTIA has compared the questions contained in the Defendants' "Study Guides" with the original copyrighted questions contained on the corresponding Certification Exam owned by CompTIA. CompTIA's analysis revealed that each "Study Guide" contained numerous exam questions that are either identical or substantially similar to CompTIA's copyrighted exam questions.

23.    The Defendant's copyright infringement is further confirmed by the representations on its website. Specifically, the CheatExams Website represents that it utilizes "[r]eal test questions & verified answers." (See Exhibit D to Second Am. Compl.) The CheatExams website further provides the following:

---

[3]    In operating the websites in question, the Defendants operated under assumed names, through unregistered businesses, and provided false contact information to third-parties. Only after expending significant time, effort and resources were the true identities of the Defendants uncovered.

**Do your exams have all the questions I will see on the official exam?**

Yes. We constantly scour the official exams to ensure, that our study guides are covering all topics and that you will be able to find similar questions in our study guides; no surprises! This is why we guarantee, CheatExams.com study guides are the only preparation you need to pass the official exam on your first try.

(See id.)

24.    Furthermore, the CheatExams Website provides:

**Why CheatExams??**

Real certification questions? If you have ever been to a certification exam, you know how hard it is, to pass such exams. You may spend big money in training camps, books & practicals, but still cannot be sure of passing. We are here to put an end to all your worries. Use our **CramSheets** and you will not need anything to pass the toughest of exams as we sell only real exam questions.

(See Exhibit E to Second Am. Compl.)

25.    The CheatExams Website contains testimonials from purchasers which include, but are not limited to, the following: "Your CramSheets are perfect! After downloading your CompTIA A+ cramsheets and studying for 1 week, I went and took both the O/S and Hardware A+ exams and passed both together in about 15 minutes! No surprises. Every question asked was covered in your cramsheets. Thanks!" (See Exhibit F to Second Am. Compl.) The CheatExams website further

10

indicates that the Defendants have sold over "365,000+ guides" to date.  (See Exhibit E to Second Am. Compl.)

26.    The Defendants, through www.troytec.com and www.testkiller.com have offered for sale and sold throughout the United States and worldwide, various documents individually identified as "TestKillers" that are comprised of actual copyrighted exam questions and answers owned by CompTIA.  These include, but are not limited to, the following "TestKillers": (1) "TestKiller: i-Net+"; (2) "TestKiller: A+ Core Hardware"; (3) "TestKiller: A+ OS Technologies"; (4) "TestKiller: Network+"; and, (5) "TestKiller: Server+."  (Relevant copies of the Troytec and TestKiller Websites are attached as Exhibit G to Second Am. Compl.)  These "TestKillers" sell for $60.00 per copy.  The Troytec and TestKiller Websites also contain unauthorized depictions of CompTIA's registered and unregistered trademarks without proper attribution.

27.    CompTIA has compared the questions contained in the Defendants' "TestKillers" with the original copyrighted questions contained on the corresponding Certification Exams owned by CompTIA.  CompTIA's analysis revealed that each "TestKiller" contained numerous exam questions that are either identical or substantially similar to CompTIA's copyrighted exam questions.

11

28.    The Troytec and TestKiller Websites represent that it utilizes "Real Exam questions, verified and accurate answers." (See, Exhibit H to Second Am. Compl.)

29.    Prior to the commencement of this litigation, CompTIA advised the Defendants that they were misusing CompTIA's copyrighted material and requesting that it desist from further action related to the same. (See Exhibit E to CompTIA's Mem. of Law in Supp. of Mot. for Supplemental Service dated 5/13/03.)

**LEGAL CLAIMS**

30.    The facts set forth above demonstrate that CompTIA is entitled to judgment on Count One of its Complaint sounding in copyright infringement, 17 U.S.C. § 101, et seq. As the Court of Appeals has recognized "[t]o prevail on a claim of copyright infringement, the plaintiff must demonstrate both (1) ownership of a valid copyright and (2) infringement of the copyright by the defendant." Merkos L'Inyonei Chinuch, Inc. v. Otsar Sifrei Lubavitch, Inc., 312 F.3d 94, 97 (2d Cir. 2002) (citations omitted). Both of these elements have been demonstrated in this instance.

31.    The facts set forth above also demonstrate that CompTIA is entitled to judgment on Count Two of its Complaint that alleges a claim for the infringement of its Registered Trademarks in violation of 15 U.S.C. § 1114 et seq.

12

32.    To establish infringement of its Registered Trademarks, CompTIA need only show that Defendant used, without consent, the Registered Trademarks of CompTIA and such use is likely to cause confusion, or to deceive consumers. 15 U.S.C. §1114.  The Second Circuit has held that the "likelihood of confusion" element is satisfied by showing "initial confusion" among potential customers attracted to the defendant based on the plaintiff's reputation.  <u>Grotrian, Helfferich, Schulz, Th. Steinweg NACHF v. Steinway & Sons</u>, 523 F.2d 1331, 1340-42 (2d Cir. 1975).

33.    The facts set forth above also demonstrate that CompTIA is entitled to judgment on Count Three of its Complaint that alleges false designation of origin, false representation and false advertising pursuant to 15 U.S.C. § 1125.

34.    A plaintiff must prove three elements to state a claim for false designation of origin under the Lanham Act: "(1) involvement of goods or services, (2) effect on interstate commerce, and (3) a false designation of origin or false description of the goods or services." <u>Ryan v. Volpone Stamp Co., Inc.</u>, 107 F. Supp.2d 369, 379 (S.D.N.Y. 2000) (citation omitted).

35.    To succeed on a false advertising claim, a plaintiff must demonstrate that some aspect of a defendant's advertising practice is either literally false or, though literally true, is likely to injure plaintiff by misleading and confusing

13

consumers concerning the nature and characteristics of defendant's product or service. See McNeil-P.P.C. v. Bristol Myers Squibb Co., 938 F.2d 1544, 1549 (2d Cir. 1991).

36.     A plaintiff must establish five elements in order to establish a claim of trademark dilution. These include the following: "(1) the senior mark must be famous; (2) it must be distinctive; (3) the junior use must be a commercial use in commerce; (4) it must begin after the senior mark has become famous; and (5) it must cause dilution of the distinctive quality of the senior mark." Nabisco, Inc. v. P.F. Brands, Inc., 191 F.3d 208, 215 (2d Cir. 1999). "Dilution is the lessening of the capacity of a famous mark to identify and distinguish goods or services." Id. at 216.

37.     CompTIA is clearly the owner of the registered and unregistered marks at issue. The unregistered marks are distinctive, and thus valid, as consumers associate those marks with CompTIA's certification process and programs. The confusion at issue in this case is overt and purposeful. The Defendants' competitive use of CompTIA's mark directly concerns CompTIA's Certification Program and implies endorsement, sponsorship or affiliation with CompTIA. Moreover, CompTIA licenses others to validly affiliate themselves as test preparation vehicles for CompTIA's Certification Programs. The Defendants' conduct implies a similar

14

relationship. The Defendants' action further dilutes CompTIA's mark as CompTIA becomes associated with the products released by the Defendants.

38.    The facts set forth above further demonstrate that CompTIA is entitled to judgment on Count Four of its Complaint alleging violation of the Connecticut Uniform Trade Secrets Act.

39.    Under the Connecticut Uniform Trade Secrets Act ("CUTSA"), "actual or threatened misappropriation may be enjoined" by the Court. Conn. Gen. Stat. § 35-52(a). The statute defines misappropriation to mean: "(1) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means[.]" Conn. Gen. Stat. § 35-51(b). A trade secret means "information, including a formula, pattern, compilation, program, device, method, technique, process, drawing, cost data or customer list that (1) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use , and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Conn. Gen. Stat. § 35-51(d).

40.    The Defendants' willful and knowing misuse and sale of CompTIA's trade secrets is sufficient to establish a violation of CUTSA. CompTIA has employed

15

reasonable methods to protect these materials, including the establishment of secure testing centers, contractual restrictions, and even student acknowledgement of the exam's propriety and confidential characteristics. CompTIA's Certification Program and exams are a significant source of revenue for CompTIA. Its value is severely undercut where the reliability of both the exams and the testing procedures are put in issue by the unlawful acts of the Defendants. Here, the Defendants have actually misappropriated this confidential material.

41.    The facts set forth above also demonstrate that CompTIA is entitled to judgment on Count Five of its Complaint alleging a violation of the Connecticut Uniform Trade Practices Act ("CUTPA").

42.    CUTPA provides, in relevant part, that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. § 42-110b(a). In order to determine whether a trade practice is unfair or deceptive, the Connecticut Supreme Court "has adopted the so called cigarette rule developed by the Federal Trade Commission in the context of § 5(a)(1) of the Federal Trade Commission Act." Boulevard Assoc. v. Sovereign Hotels, Inc., 72 F.3d. 1029, 1038 (2d Cir. 1995). In applying this rule, a court must consider:

> (1) [W]hether the practice, without necessarily have been previously considered unlawful, offends public policy as it has

been established by statutes, the common law, or otherwise
– whether in other words, it is within at least the penumbra of
some common law, statutory or other established concept of
unfairness;

(2) whether it is immoral, unethical, or oppressive, or
unscrupulous;

(3) whether it causes substantial injury to consumers
[(competitors or other businessmen)].

Williams Ford, Inc. v. Hartford Courant Co., 232 Conn. 559, 591, 657 A.2d 212

(1995) (citations omitted).  An unfair and deceptive scheme in conjunction with

violations of a plaintiff's intellectual property rights is sufficient to establish a CUTPA

claim.  See Titan Sports, Inc. v. Turner Broadcasting Systems, Inc., 981 F. Supp. 65,

71 (Conn. 1997).

43.    The facts and analysis set forth above fully demonstrates the deceptive

conduct of the Defendants.  The false names, inaccurate contact information, and

unregistered business names under which the Defendants conduct business is

unscrupulous within the meaning of CUTPA.  Consumers and other businesses

need to know who they are dealing with in commerce, so that those parties can be

held accountable for the products they produce.  Clearly the Defendants' misuse of

CompTIA's intellectual property rights and web of deception employed to hide their

identities is exactly the type of conduct that CUTPA seeks to restrain.

44.   In support of this motion, CompTIA relies on the testimony of CompTIA's Vice President of Certification, Gene Salois, and the evidence submitted to the Court on September 3, 2003, during the course of a hearing on Plaintiff's Application for Preliminary Injunction.[4]  A copy of the transcript from this hearing is attached hereto as Exhibit A.

45.   CompTIA expended considerate sums to investigate and litigate this matter.  CompTIA was forced to incur additional attorneys' fees and costs because of the Defendants' deceitful conduct outlined herein.   In total CompTIA spent $73,363 in attorneys' fees and $4,578.83 in costs to litigate this matter.[5]

**REQUESTED RELIEF**

Based on all these factors, CompTIA requests that a default judgment be entered consistent with the relief requested in its underlying Complaint.  Specifically, CompTIA seeks the following:

1.   That the Court enter judgment against Defendants that they have:

---

[4]   CompTIA respectfully incorporates herein by reference the testimony of Mr. Salois and the evidence previously submitted to the Court concerning the Defendants' unlawful and tortuous conduct.

[5]   Plaintiff's counsel certifies that the above-referenced figures are a true and correct representation of the costs and attorney's fees expended to date in this matter.  Upon the Court's request, an affidavit and supporting documentation can be made available.

(a)    willfully infringed CompTIA's rights in the following copyrighted Certification Exams under 17 U.S.C. §501:

(i)    "A+ Core Hardware Exam",

(ii)    "A+ Operating Systems Technologies Exam",

(iii)    "Network+ Exam",

(iv)    "i-Net+ Exam",

(v)    "Server+ Exam".

2.    That the Court further enter judgment against Defendants that they have:

(a)    willfully infringed CompTIA's rights in the following federally Registered Trademarks and servicemark under 15 U.S.C. §1114(1);

(i)    Registration No. 1,964,708 ("CompTIA");

(ii)    Registration No. 1,994,504 ("A+ Certification Program").

(b)    committed and are committing acts of false designation of origin, false or misleading description of fact and false or misleading misrepresentation, and dilution of famous marks, against CompTIA as defined 15 U.S.C. §1125(a) and (c);

(c)    engaged in unfair business practices under Conn. Gen. Stat. § 42-110b, et seq.;

19

(d)    misappropriated trade secrets belonging to CompTIA in violation of Conn. Gen. Stat. § 35-50, et seq.;

(e)    otherwise injured the business reputation and business of CompTIA by Defendants' acts and conduct set forth in this complaint.

3.    That the Court issue preliminary and permanent injunctive relief against Defendants, and that Defendants, their officers, agents, representatives, servants, employees, attorneys, successors and assigns, and all others in active, concert or participation with Defendants be enjoined and restrained from:

(a)    imitating, copying or making any other infringing use or infringing distribution of Certification Exams protected by CompTIA's Registered and Unregistered Trademarks and Servicemarks, including, but not limited to, the following Trademark Registration Nos.:

(i)    Registration No. 1,964,708 (CompTIA); and,

(ii)    Registration No. 1,944,509 (A+ Certification Program).

And the Unregistered Trademarks and Servicemarks: (1) A+ Core Hardware, (2) A+ O/S Technologies, (3) Network+, (4) Server+, (5) i-Net+, (6) Network+ Certification, (7) Server+ Certification, and (8) i-Net+ Certification; and the Certification Exams protected by the following copyrights:

(i)    "A+ Core Hardware Exam";

(ii)     "A+ Operating Systems Technologies Exam";

(iii)    "Network+ Exam";

(iv)    "i-Net+ Exam"; and

(v)     "Server+ Exam".

And any other works now or hereafter protected by any CompTIA trademark or copyright.

(b)     manufacturing, assembling, producing, distributing, offering for distribution, circulating, selling, offering for sale, advertising, importing, promoting or displaying any Certification Exam, document, or thing bearing any simulation, reproduction, counterfeit, copy, or colorable imitation of any of CompTIA's Registered Trademarks, Service Mark, Unregistered Trademarks or copyrights, including, but not limited to, the trademarks, Service Mark and copyrights in Section 2(a) above;

(c)     using any simulation, reproduction, counterfeit copy, or colorable imitation of CompTIA's Registered or Unregistered Trademarks, Service Mark, or copyrights, including, but not limited to the trademarks, Service Mark and copyrights listed in Section 2(a) above, in connection with the manufacture, assembly, production, distribution, offering for distribution,

21

circulation, sale, offering for sale, import, advertisement, promotion, or display of any Certification Exam, document or thing not authorized by CompTIA.

(d)     using any false designation of origin or false description, which can, or is likely to lead, the information technology industry or public, or individuals, to erroneously believe that any Certification Exam or thing that has been manufactured, assembled, produced, distributed, offered for distribution, circulated, sold, offered for sale, imported, advertised, promoted, displayed, licensed, sponsored, approved, or authorized by or for CompTIA when such is not true in fact;

(e)     using reproductions, counterfeits, copies or colorable imitations of CompTIA's copyrighted and trademark protected Certification Exams and other materials and the distribution, offering for distribution, circulation, sale, offering for sale, advertising, importing, promoting or displaying of spurious merchandise not authorized or licensed by CompTIA;

(f)     using the name or any variation thereof of any of CompTIA's Registered or Unregistered Trademarks and/or copyrighted Certification Exams and/or original exam question in any of Defendants' trade or corporate names;

22

(g)     engaging in any other activity constituting an infringement of any of CompTIA's Registered or Unregistered Trademarks, servicemark and/or copyrights, or of CompTIA's rights in, or right to use or to exploit these trademarks, servicemark, and/or copyright; and,

(h)     utilizing     and     maintaining     www.cheatexams.com, www.troytec.com, www.testkiller.com, or any derivation thereof, including any other website address, search engine, registration agent, internet host or other business or entity as a vehicle through which the Defendants display or make use of the Plaintiff's trademarks or distribute in any manner whatsoever any materials comprised in whole or in part of actual copyrighted exam questions and answers, described more fully above, owned by CompTIA, including but not limited to the Defendants' said "Study Guides" or "TestKillers; and,

(i)     assisting, aiding or abetting any other person or business entity in engaging or performing any of the activities referred to in subparagraphs (a) through (h) above, including, but not limited to the transfer of the domain names www.cheatexams.com, wwwtroytec.com, and www.testkiller.com to be utilized as a vehicle through which CompTIA's intellectual property rights are violated.

4.    That the Court enter an order of impoundment pursuant to 15 U.S.C. §1116(a)(d)(1)(A), 17 U.S.C. §§503 and 509(a) and 28 U.S.C. §1651(a) impounding all counterfeit and infringing copies of CompTIA's Certification Exams bearing any of CompTIA's Registered or Unregistered Trademarks or servicemarks, and any related item, including business records which are in Defendants' possession or under their control;

5.    That the Court enter an order declaring that Defendants hold in trust, as constructive trustees for the benefit of CompTIA, their illegal profits gained from the distribution of counterfeit and infringing copies of CompTIA's Certification Exams, and requiring Defendants to provide CompTIA with a full and complete accounting of all amounts due and owing to CompTIA as a result of Defendants' illegal activities;

6.    That the Court order Defendants to pay CompTIA's general, special, actual and statutory damages as follows:

(a)    CompTIA's damages and Defendants' profits pursuant to 17 U.S.C. §504(b); or, in the alternative, enhance statutory damages pursuant to 17 U.S.C. §504(c)(2) for Defendants' willful infringement of CompTIA's copyrights;

24

(b)    CompTIA's damages and Defendants' profits pursuant to 15 U.S.C. §1117(a) trebled pursuant to 15 U.S.C. §1117(b); or, in the alternative, enhance statutory damages pursuant to 15 U.S.C. §1117(c)(2) for Defendants' willful violation of CompTIA's Registered Trademarks and servicemark; and,

(c)    CompTIA's damages and Defendants' profits pursuant to Conn. Gen. Stat. § 35-50, et seq. and Gen. Stat. § 42-110b, et seq.

7.    That the Court order Defendants to pay CompTIA both the cost of this action and the reasonable attorneys' fees incurred by it in prosecuting this action; and,

8.    That the Court grant CompTIA such additional relief as is just and proper.

## II.    CONCLUSION

Based on the foregoing, CompTIA respectfully requests that this motion be granted in its entirety.  For the Court's convenience a proposed Order of Default Judgment has been submitted contemporaneously with the filing of the motion.

THE PLAINTIFF
THE COMPUTING TECHNOLOGY
INDUSTRY ASSOCIATION, INC.

By:    ___/s/_____

Brian C. Roche      (ct 17975)
Matthew P. Lundy  (ct 20603)
Pullman & Comley, LLC
850 Main Street, P.O. Box 7006
Bridgeport, CT  06601-7006
Telephone:   (203) 330-2000
Facsimile      (203) 576-8888
E-Mail:         mlundy@pullcom.com
                     broche@pullcom.com

26

## CERTIFICATION

Pursuant to Fed. R. Civ. P. 5(b), I hereby certify that a copy of the above was mailed on the date heron to all counsel and pro se parties of record.

No Appearing Defendants

/s/
_____
Brian C. Roche

BPRT/46893.69/BCR/494242v1

27